ELIZABETH J. NORWOOD *et al.*

*v.*

HENRY GUERDON.

60   253
27a  130
60   253
78a  320
60   253
178   45

1. LIFE INSURANCE POLICY—*assignment by wife.* Where a person insured his life for the benefit of his wife, and she endorsed her name on the policy in blank, and the husband procured a loan of money and pledged the policy as collateral security, and afterwards paid the agent of the company the larger portion of the premium, and the creditor holding the policy

having called on the agent to learn whether the premium had been paid, and being informed by the agent that the greater part had, and the balance would be paid in a few days; the time for its payment was permitted to pass, and the agent declared a forfeiture, and a new policy was issued to the wife in her name, for the same amount, on the same terms, and in other respects similar to the first, and the sum paid towards the premium on the first policy was applied to the premium on the new policy; and the person whose life was insured having died, the creditor claimed that he was entitled to payment out of the funds: *Held*, that the declaring the forfeiture and the issuing of the new policy did not affect the rights of the creditor, and that his lien attached to the fund under the new policy as he held it under the first.

2. The new policy was, in substance, though different in form, a mere renewal of the old. It was a renewal evidenced by the policy instead of a receipt, and the creditor should be allowed the same interest he would have had in the old if the same money had been applied in procuring the ordinary renewal.

3. ASSIGNMENT BY WIFE—*its effect.* The wife having placed her name on the back of the policy at the request of her husband, and delivered it to him, she thus enabled him to procure the loan of money, and it would be opening a door to fraud to permit the wife to deny the power of the husband to fill up the assignment. Such an assignment by the wife must be held valid and binding in equity. By signing her name in blank, she gave the public the evidence of her consent—an act that could only be interpreted as designed for an assignment—and the same consequences must attach against her as would follow from such an act performed by any other person.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. O. B. SANSUM, Mr. ROBERT HERVEY, Mr. H. A. WHITE and Mr. WM. T. BURGESS, for the appellants.

Messrs. MILLER, FROST & LEWIS, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

· In January, 1860, Joseph E. Norwood took out a policy of insurance upon his life for the sum of $10,000, from the Manhattan Life Insurance Company, payable at his death to one George W. Pulsifer. In August, 1865, Pulsifer assigned this

policy to Elizabeth, the wife of Joseph E. Norwood, by endorsement thereon. Norwood being in embarrassed circumstances, and desiring to raise money upon the policy as collateral security, his wife placed her name upon the back thereof in blank, and he then pledged the policy to Alfred Sturges as security for a loan of $1200. In June, 1867, Norwood being then indebted to one Kimball, and Kimball indebted to Guerdon, the appellee herein, in the sum of $3400, it was arranged between the parties that Norwood should pay Kimball's indebtedness to Guerdon, thus cancelling a like amount of his own indebtedness to Kimball. It was further agreed that Guerdon should pay Norwood's debt to Sturges, and that Norwood should give his note for $5000 to Guerdon, who should hold the policy of insurance as security for its payment. This arrangement was carried into effect. Guerdon paid Sturges and received the policy. He also surrendered to Kimball the notes held against him and gave to Norwood his own note for $400, being the difference between the amount of the Sturges and Kimball indebtedness and the $5000 note.

The annual premium on the policy, amounting to $524.90, fell due on the 11th of January following. Prior to that day, Guerdon called at the office of the company's agent, in Chicago, to pay the necessary amount, and was then told by a clerk in the office that Norwood had paid $400 of the premium, and would pay the residue the next week. He also saw Norwood, who made a similar statement. Relying upon this partial payment and its acceptance by the company, and upon Norwood's promise to pay the residue, Guerdon gave himself no further trouble in regard to the matter. Norwood, however, did not pay the residue of the premium within the required time, but it was agreed between him and the insurance agent that the policy should be forfeited, and that a new policy should be issued in its place, to Norwood's wife, on precisely the same terms, as to premiums and dividends, as those pertaining to the old policy. This was done. Soon after the day when the premium was due, Norwood paid the excess over the $400

already paid, and received a new policy, payable to his wife, for the same amount as the one cancelled, and on the same terms. Norwood died in the following April, and this bill was brought by Guerdon against the insurance company and the widow of Norwood, to compel payment from the proceeds of the last policy of the amount due him from Norwood. The Superior Court decreed in his favor, and the defendants appealed.

The evidence in the record tends strongly to show a fraudulent combination between the insurance agent and Norwood, by which Guerdon was to be led to rely upon payment of the premium by Norwood, and thus, by allowing the day to pass, be deprived of the security of his policy, while a new one should be issued to Norwood, to which the $400 paid by him should be applied. Independently, however, of such fraudulent purpose, the decree of the court below was clearly right. This new policy was, in substance, though not in form, a mere renewal of the old. As the agent himself testifies, it was issued upon the same terms, was entitled to the same benefits, and assumed the same liabilities. The greater part of the premium was paid before the first expired, and professedly to keep it in force. It was, in fact, kept in force and renewed, but the renewal was made to take the form of a new policy instead of a renewal receipt. It was the same contract evidenced by another piece of paper. It was the duty of Norwood, according to his agreement with Guerdon, to pay the premium and keep the existing policy in force. He did, in fact, pay it, the company consenting to receive a part of it after the day of payment, as the evidence shows it had repeatedly done in former years; and in a court of chancery, an innocent party, having an interest in such contract, can not be divested of his interest by this childish juggle in the matter of form, to which Norwood and the insurance agent resorted. We entertain no doubt that Guerdon should be allowed the same interest in the new policy paid for by Norwood's money, that he would have

had in the old, if the same money had been applied in procuring the ordinary renewal.

It is, however, urged that the wife of Norwood never consented to the assignment of the original policy to Guerdon, or at least that there is no proof of such consent; but she placed her name upon the back of the policy, as she herself admits, at the request of her husband, and left the policy in his possession. Armed with this evidence of his right to pledge the instrument, he goes upon the money market and does pledge it, first to one person and then to another, and by such pledge raises money and pays his debts. It is not in evidence, and we can not presume, that the wife ever had any interest in this policy from having contributed from her separate estate towards the payment of the premium. So far as appears, her interest consisted merely in the fact that the money was to be paid to her by virtue of the assignment by Pulsifer, to whom it was originally made payable, in the event of her husband's death, and not in the fact that she had ever paid anything either to Pulsifer for the assignment, or to the company as premium. But whatever her interest, by endorsing the policy in blank and delivering it to her husband, she clothed him with all necessary evidence of a power to pledge the instrument by filling up her blank assignment, and we should be opening a door to the grossest frauds if we were to permit the wife, after having done all this, to come forward and claim that her husband had no right to assign the instrument. These assignments are valid, and are recognized by the companies. They are also of daily occurrence in the way of collateral security, and where a policy is made payable to the wife, and she endorses it in blank, and the husband pledges it, we are wholly at a loss to conceive on what ground it can be claimed that such an assignment is not valid in a court of equity. The husband and the wife are the only parties interested, and they have both participated in the assignment. The law provides no particular mode by which the wife is to manifest her consent, as in the case of conveyance of lands, and

17—60TH ILL.

if such an assignment as was made in the present case is not valid, then a policy payable to a married woman is not assignable at all. It is not, however, and can not be claimed that a policy payable to a married woman is incapable of assignment within the purview of a court of equity, but it is only claimed that in this case the wife did not consent. She gave to the public, however, the evidence of her consent by endorsing the policy in blank—an act which could be interpreted as done for no other purpose than an assignment—and the same consequences must be attached to this act against her as would follow from such an act performed by any other person. When innocent parties have advanced money to her husband on the faith of such blank assignment, she can not be permitted to repudiate the transaction. She can not be permitted to enable her husband to perpetrate a fraud.

*Decree affirmed.*

Mr. Justice Walker and Mr. Justice McAllister dissent, holding that it is a fair conclusion from the evidence that the wife never intended to assign the policy; that the mind did not accompany the act of signing. She wrote her name in blank on the back at the request of her husband, he not intimating what use he intended to make of it, and she not knowing or suspecting that such use would be made of it, or what effect could be given to it. The signature was obtained purely through the dominion of the husband, and was made by her with no intention of entering into a contract of assignment. And as the instrument is not assignable at law, she has the right in equity to rely upon the circumstances under which it was made to defeat it. The assignee took it subject to her equities, and was bound to make inquiry as to the circumstances.