ROSALIE C. BARRY, Respondent, *v.* WILLIAM H. BRUNE AND J. M. HARRIS, Appellants, Impleaded with THE MUTUAL LIFE INSURANCE COMPANY, Respondent.

*Insurance on life of husband for wife's benefit — assignment of, by wife, through coercion — Trust — Judgment of foreign court.*

The plaintiff, under the influence and coercion of her husband, assigned to the defendant Brune two policies of insurance, issued to her on the life of her husband, to secure a debt due from him to the defendant. The latter, fearing that the assignment was invalid under the laws of this State, in pursuance of an arrangement with the company, allowed the policies to be forfeited for non-payment of premiums, and received new policies from the company for his benefit as a creditor, for the same amounts, bearing the same numbers, referring to the same register in the company's books, and for the same premiums, except that the latter were payable semi-annually instead of annually, such policies being issued upon the original applications and without a new examination.

*Held*, that the new policies were to be considered as renewals of the old ones, and subject to a trust in favor of the plaintiff the same as was impressed upon the original ones.

After the commencement of this action, brought to restrain the company from paying over the amount of the policies to the defendant Brune, and to compel the payment thereof to the plaintiff, Brune commenced an action against the company in the United States Circuit Court, in Maryland, upon the new policies, and recovered judgment for the amount thereof. *Held* (1), that this judgment was impressed with the same trusts in favor of the plaintiff as were the policies ; (2), that it only decided that the company was bound to pay the money to the defendant in pursuance of its agreement so to do, and that it did not decide that he would be entitled to hold the money for his own use, and free from the trust existing in favor of the plaintiff.

*Held*, further, that it was within the power of this court to enjoin the defendant Brune from taking any proceedings to enforce the collection of the judgment recovered by him in Maryland, and that a judgment to that effect in this case was proper, and should be affirmed.

Appeal from a judgment in favor of the plaintiff, entered on the trial of this action at the Special Term.

*S. P. Nash*, for the appellants.

*John K. Porter*, *Henry E. Davies* and *Julien T. Davies*, for The Mutual Life Insurance Company, respondent.

*Edmund Randolph Robinson*, for the plaintiff respondent.

DANIELS, J. :

The object of this action was to prevent the moneys claimed upon two policies of life insurance, issued by the defendant The Mutual Life Insurance Company, from being paid over to the defendant Brune, or his assignee, and to secure an adjudication that the policies were, in fact, the property of the plaintiff, and that the moneys owing upon them should be paid to her. The policies were issued in the name of, and to the defendant William H. Brune, upon the life of John S. Barry, the plaintiff's husband. And when they were issued, and at all times since then, Brune, as a creditor, had an insurable interest in the life of Barry exceeding the amount insured. One of the policies was for the sum of $20,000, and the other for $5,000, and they were both issued on or about the 18th day of January, 1872, and Barry, whose life was insured, died in the following month of March.

Before either of these policies was issued, two other policies in the same amount were issued by the same company, upon the same life, in favor of the plaintiff, who was then the wife of John S. Barry. The first was dated on the 11th day of January, 1867, for the sum of $20,000, at the annual premium of $592.80, payable on that day in each year. And the second was dated on the 9th of December, 1870, for the sum of $5,000, and it was issued in consideration of the payment of an annual premium of $168.60, payable on that day in each year. The premiums on these policies were properly paid up to and including the year 1871, when the plaintiff's husband, John S. Barry, became embarrassed in his business, which was that of banker. And at his request the defendant Brune loaned and advanced him the notes of his firm for about the sum of $80,000. These notes were to be paid by Barry, and, in the mean time, he was to secure the firm of Brune & Sons against their liability upon them. For that purpose, in July, 1871; the plaintiff under the persuasion, controlling influence and coercion of her husband, executed an assignment in blank which was afterwards so filled up by his direction as to assign the two policies in suit to the defendant Brune, and it was then mailed to him by depositing it in the post-office at the city of New York, addressed to him at Baltimore, which was the place of his residence. He held the assignment and the policies in that form until

the days on which the premiums respectively became payable and then omitted to pay such premiums in order to secure a forfeiture of the policies for that default, and have others issued to him in his own name in their place. It appears to have been understood between himself and the agent of the insurance company at Baltimore, that the policies should be so changed partially, if not wholly for the purpose of correcting an infirmity in the title created by the assignment, arising out of the suspected inability, under the laws of this State, of a married woman to transfer the insurance effected for her benefit upon the life of her husband.

By a clause contained in each of the policies, they were liable to forfeiture for the non-payment of the premiums on the days when payment should be made, and after such forfeiture the company was in terms exonerated from all liability upon them, but that was in this case qualified by the understanding that the assignee was to receive others in his own name in lieu of them. Pursuant to that the policies were allowed to lapse for such non-payment and, with the assent and co-operation of Barry, those now in suit were applied for and received by the defendant Brune. They were issued and delivered to him upon the basis of the applications and examinations made for those held by the plaintiff; they bore the same numbers respectively ; they were for the same amounts, referred to the same registers in the company's books, and were for the same premiums, but payable in semi-annual instead of annual payments, as the policies which had lapsed, and they were issued in consideration of the payment of the premiums remaining unpaid on the original policies, and that to the extent of $169.48 was made from dividends, or profits, credited to the plaintiff by the company on the larger and first policy it had delivered to her.

It is entirely clear from these facts, that no substantial change was made in the insurance by what transpired. The new policies were a substitute for those previously issued, a continuation in fact of the same insurance but in the name and for the declared benefit of the defendant Brune. They were designed simply to secure him the same advantage expected to have been derived from the assignment alone, and which would have resulted from it, if that had been a valid and binding instrument. It was not intended to create a new insurance, but simply to render that previously made effectual

and irrevocable in the hands of the defendant Brune. That is very apparent from the circumstances already mentioned, and from the facts that no increase or change was made in the amount of the insurance, or of the premiums to be paid for it. Neither party intended or expected that the company should be held liable on the four policies, but that the first two should expire according to their terms, and the others be substituted in their place, and that is what was actually effected. It was done to render the insurance a valid security in the hands of the defendant Brune, which it was supposed the assignment alone had failed to accomplish. That was the nature of the understanding entered into with the agent of the insurance company, and its performance was consummated, as far as that was practicable, by the forfeiture of the old and delivery of the new policies. They made the same insurance with the simple change, that from that time it stood in Brune's name instead of being held by him as assignee; and it was supported by the identical interest in the life of the debtor, Barry, as the assignment was made to protect. The same end was to be subserved by each of the instrumentalities, that was the security of the creditor upon the obligation of the debtor. In one form it was to be done by means of the assignment, which, if it had been valid, would have entitled him to the insurance moneys for its extinguishment; and in the other by a surrender of his formal position as assignee for an insurance in consideration of it directly in his own name. The object to be attained by each was precisely the same; and if Barry had lived and paid the notes, there can be no doubt, from the nature of the transaction, that the plaintiff would have been concededly entitled to the benefit of the final insurance. Her policies were the moving or inducing cause of those issued to the defendant Brune. If they had not been, there is good reason for believing that a new application and examination would have been required, together with an increased premium for the additional age of Mr. Barry at the time. But instead of being an independent transaction, the two policies finally issued, proceeded from and depended upon the others, in such a manner as to form a mere continuation of the same insurance. The liability created by those issued to the plaintiff was carried into those received for them by Brune, the defendant, and for the purpose of determining the

rights of the parties they must be regarded as, in all essential respects, the same. For that reason, if the policies assigned were necessarily, though not designedly, held by the defendant Brune for the benefit of the plaintiff, and not for himself or his firm, the same trust impressed itself upon those substituted in their place. It is a settled principle, both in law and equity, that the true owner of property cannot be deprived of his or her right to it by changing it into something else, as long as the identity can be ascertained and traced. (*Silsbury* v. *McCoon*, 3 Cow., 379, 390.) The rule is broad and liberal, holding that " wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner, or *cestui que trust*. The general proposition, which is maintained both at law and in equity, upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, not being *bona fide* purchasers for a valuable consideration without notice, any more valid claim in respect to it than they "respectively had before such change." (2 Story's Equity Jur. [11th ed.], 572, § 1258.) And it has been further affirmed, by the same author, that " it will make no difference in law, as indeed it does not in reason, what change of form, different from the original, the property may have undergone, whether it be changed into promissory notes or other securities, or into stock or into money. For the product of the substitute for the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such, and the right only ceases when the means of ascertainment fails." (Story on Agency [4th ed.], §§ 229–231.) And the principle has been frequently applied for the protection of the rights of the assured in cases in which one policy has been surrendered and another received in its place, on the basis of the original insurance. (*Dutton* v. *Willner*, 52 N. Y., 312; *Nesbitt* v. *Berridge*, 10 Jurist [N. S.], 53 ; *Chapin* v. *Fellowes*, 36 Conn., 132 ; *Lemon* v. *Phœnix Life Ins. Co.*, 38 id., 294 ; *Norwood* v. *Guerdon*, 60 Ill., 253.)

To that extent it is entirely applicable to the present controversy,

even if the defendant Brune can in any proper sense be considered a *bona fide* assignee of the original policies. For by the statute of the State, authorizing a married woman to insure the life of her husband, the insurance has been exonerated from the rights of his creditors, and placed beyond her power of alienation to them. (3 R. S. [5th ed.], 240, § 80; *Eadie* v. *Slimmon*, 26 N. Y., 9; *Barry* v. *Equitable Ins. Co.*, 59 id., 587.) And as the assignment proceeded from her to the defendant Brune, he had constructive notice of that infirmity in his title which seems to have been followed by actual notice of the fact, before the conversion of the old policies into the new ones. He was not a *bona fide* assignee therefore, and not within the protection often secured to *bona fide* purchasers for value without notice. He had what the law regards as the equivalent of actual notice, and acquired his knowledge of the facts from which it proceeded, before he endeavored to change the form of the policies. When he made that change, for the purpose of defeating the rights it was supposed the plaintiff would otherwise have been entitled to claim, it was both unauthorized and wrongful.

But even if he had been an assignee for value without notice, his title would still have been defective. For by the assignment which was made no title whatever to the policies was transferred to him. For there was not only an absence of power to make a valid assignment in the assignor, but beyond that, it never received that assent from her which was necessary to render it binding upon her. It was found as a fact, upon evidence not questioned as insufficient, that she executed it under the persuasion, controlling influence and coercion of her husband; and that, as well as her want of power, rendered it entirely inoperative against her. (*Barry* v. *Equitable Life Ins. Co.*, *supra*; *Whitridge* v. *Barry*, 42 Md., 140.) For that reason, as the insurance continued to be practically the same as it previously had been, after the new policies were issued, and, in substance, only a continuation of that which had been made in her own name, she was entitled to receive the moneys the company became liable to pay upon them.

But it has been urged by the learned counsel representing the defendants Brune and Harris, the latter of whom has been appointed trustee in place of the deceased assignee Whitridge, that the insurance company was not entitled to be protected against a further pay-

ment of the same amount to such trustee, as it has been by the judgment entered in this action. And reliance has been placed upon a judgment recovered in the United States Circuit Court for the disstrict of Maryland, in support of that position. That judgment was recovered in favor of Horatio S. Whitridge, as assignee of the defendant Brune, against The Mutual Life Insurance Company. It was, in form, an action at law upon the policies issued to the defendant Brune, to recover their amount because of the decease of Barry, whose life was insured by them. And it was commenced while the present action was pending, and after both Brune, and Whitridge his assignee, had appeared as defendants in this suit. The insurance company, by its plea in the United States Circuit Court, denied that it was indebted to the plaintiff in the action there pending, or that it had promised as was alleged, and then set forth the pendency of the present action as a defense. A replication to the plea was filed, which in no manner changed the issues tendered by it. Upon those pleadings the action was tried, and a recovery had in favor of the plaintiff for the amount due on both the policies. That was a direct result of the form of the contracts entered into upon the forfeiture of the policies issued to the plaintiff. The simple pendency of this suit in this State constituted no legal obstacle to the maintenance of that action in the State of Maryland. And as the insurance company had promised to pay the loss to Brune, the assignor of the plaintiff in that action, and had become indebted by the decease of Barry, a liability, according to the contracts entered into, was clearly made out. That was all that was in issue in the action in the United States Circuit Court ; and to that extent only, is the judgment recovered conclusive as to the obligation of the company. Whitridge, as the assignee of Brune, could very properly maintain that action as he did, for he had the express promise of the company to his assignor to predicate it upon. And that was sufficient to entitle him to recover in a court of law. But whether, after a recovery, he could appropriate the fruits of it, or whether by paramount title of the plaintiff in this suit he could be deprived of them, were matters in no way involved in the litigation between Whitridge, as assignee of Brune, and the company. What was in controversy, was his right to the insurance moneys under the terms of the policies. So far as the company was concerned, and without a superior claim-

ant, he was clearly entitled to an adjudication of those matters in his favor, and that was all that the judgment recovered in the United States Circuit Court could or did settle, for a judgment is only final and conclusive on the points actually in issue, and which may be litigated by the parties. (*Royce* v. *Burt*, 42 Barb., 655 ; *Burwell* v. *Knight*, 51 id., 267; *Sweet* v. *Tuttle*, 14 N. Y., 465 ; *Campbell* v. *Consalus*, 25 id., 613 ; *Angel* v. *Coon*, 38 id., 378.) As the policies themselves, upon which the action was prosecuted, were in equity affected by a trust in Brune's hands for the benefit of the plaintiff, so was the judgment recovered by his assignee, and so would the money be if he were permitted to receive it. The trust which attached itself to the policies also impressed itself upon the judgment for the recovery of the amount of them. That necessarily follows from the principle already mentioned, and as the existence of such trust was not involved in the action in which the judgment was recovered, and the plaintiff was in no way a party to it, that was a proper subject of inquiry in this case, notwithstanding the existence of that judgment. It was only adjudged in the Circuit Court that the plaintiff in that action could enforce the promises the company had made to his assignor. Whether he could retain the money from the plaintiff in this action after he recovered it, was neither in issue nor determined. That depended upon evidence and facts not pertinent to that controversy, but entirely extraneous to it, and they formed a subject-matter entirely distinct and independent of it. It is by no means an unusual thing for one party to recover and collect money from another, which in the end may be found to be the equitable property of a third, and wherever that may appear to be the case, equity always intervenes and determines who has the paramount right to receive and retain it. In fact that is always the case as to property held in trust either by the wrongful act of a party, or upon a lawful and conventional trust, created by the act of one person for the benefit of another. The obligations are the same in each class of cases. The trustee, whether made such by operation of law or the voluntary act of another, holds the trust property not for himself, but for the party beneficially interested in it and ultimately entitled to receive it; and the recovery of it from another, either by force of a contract for its payment or restoration, or by means of the title alone, vests the person charged

with the trust with no greater right or interest as to the *cestui que trust*, than he would have if the subject-matter were never involved in legal controversy. From the relation borne to the property, whatever the party so recovering it may do, he does not act for himself, but for the party who has the final right to receive and recover the property from him. That was the situation of Brune and his assignee in the present case. While they had the nominal and apparent title to the policies, the plaintiff was the beneficial and paramount owner of them. And her title could not be, and was not, divested or in any form impaired by reason of the circumstance that a judgment for a recovery of the debt had been rendered in favor of one of them upon contracts made with the other, enforcing the simple obligation for the payment of the money; whether in equity the plaintiff or the assignee of Brune should receive the money, was another controversy, in no way disposed of until it was heard and decided in the present action. And in this case it was properly held that she had the paramount right, and that the money should be paid to her as her property. That resulted necessarily from the facts that the original policies were hers; that she never parted with her title to them, and by those issued to the defendant Brune the same insurance was in effect continued.

There was but one insurance either in fact or in law, and the contest was limited to the right to its proceeds. The insurance company became liable for only one aggregate sum of $25,000, and it received the premium or consideration for that, and for nothing beyond it. Whitridge, as the assignee of Brune, who received the new policies in the place of and as substitutes for the old ones, limited his claim to the recovery of that money, and for that judgment was awarded in his favor. The plaintiff in this action claimed the same fund, and her right to it has been established. The payment or deposit already made of it, pursuant to the judgment in this case, will discharge the entire liability of the insurance company, and satisfy the judgment recovered by Whitridge and now held by the defendant Harris, who was appointed as his trustee upon his decease. And it was therefore within the power of this court to enjoin further proceedings afterwards for the enforcement of that judgment. Complete justice

could not otherwise be done between the parties. Whitridge recovered a judgment for money which was really the property of the plaintiff in this action. And this court has now determined that instead of its being paid to him, and then by him, as it should be if he received it, paid over to the plaintiff, that it shall be paid directly to her. And it could not properly do that, without at the same time protecting the company against liability to make another payment of it to Harris as the trustee of Brune and Whitridge. The Code invested the court with the power of pronouncing just such a judgment in the case. It could not otherwise determine the entire controversy before it or the ultimate rights of the parties as between themselves, as it has been empowered to do. (Code, §§ 122, 274.) It was also properly incidental to an action in equity prosecuted for the settlement of conflicting claims to the same fund or property. Judgment for its payment to one of the parties required that the others should be precluded from also demanding or receiving it; and that could only be done in one of two ways: either by requiring the judgment recovered for the debt to be actually satisfied and discharged of record, or enjoining the party in whose favor it stood from afterwards proceeding with its collection. The insurance company was made a party to the action for the purpose of concluding it by the judgment which should be rendered on the conflicting claims made to the proceeds of the policies. And one of the incidents in the determination of such a controversy is to afford protection to the debtor on making the payment directed by the final judgment. It is based upon the facts proved, for the purpose of showing to whom the money should be rightfully paid; and for that reason, within the rule mentioned in the case of *Kay* v. *Whittaker* (44 N. Y., 565, 576). Complete redress could be awarded in no other way. As the judgment in the other case was not actually satisfied of record, its future collection, on the payment of the money to the person entitled to receive it, or its deposit in court for her, was lawfully enjoined. (*Savage* v. *Allen*, 54 N. Y., 458; *N. Y. and Harlem R. R.* v. *Haws*, 56 id., 175.) The case was a special one, and the controversy was properly terminated in that manner. There would have been no reason in allowing it to remain open for future litiga-

tion upon the same evidence, in the courts of another State. But as this action was the first and only one commenced for the purpose of settling the conflicting claims made to the insurance money, by a party who was a citizen of this State, and all the parties having any interest in the controversy were brought before the court, it could do no less than it did, under the well settled principles of equity jurisdiction, which required that the dispute should be completely and effectually disposed of by the judgment finally rendered in the case. (*Rathbone* v. *Warren*, 10 Johns., 587; *Miller* v. *McCan*, 7 Paige, 451; *Elliott* v. *Pell*, 1 id., 263, 268; *Jones* v. *Grant*, 10 id., 348, 350.) Any different disposition would have invited further litigation between some of the parties without being attended by any beneficial result not attainable in the present action. The judgment was right and it should be affirmed, with costs to the respondents.

BRADY, J., concurred. DAVIS, P. J., taking no part.

Judgment affirmed, with costs.