## J. H. Osborne, Receiver, v. Harriet B. Dewees.

1. HUSBAND AND WIFE—*Pledges of Life Policies to Secure Husband's Debts.*—Where a wife and husband participate in the assignment of a life insurance policy on the life of the husband, payable to the wife, and she leaves the same, thus assigned, in the hands of the husband, she will be bound by whatever disposition her husband may make of such policy in pledging the same to secure his debts.

Osborne v. Dewees.

**Bill of Interpleader.**—Trial in the Circuit Court of Morgan County; the Hon. ROBERT B. SHIRLEY, Judge, presiding; appeal by the unsuccessful party. Heard in this court at the May term, 1898. Reversed and remanded with directions. Opinion filed October 5, 1898.

JOHN A. BELLATTI, CHARLES A. BARNES and RICHARD YATES, attorneys for appellant.

M. T. LAYMAN and PATTON, HAMILTON & PATTON, attorneys for appellee.

MR. PRESIDING JUSTICE GLENN delivered the opinion of the court.

The Equitable Assurance Society of the United States, The Provident Life Savings Assurance Society of New York and the Provident Savings Life Assurance Society of New York, each filed bills of interpleaders in the Circuit Court of Morgan County, making Jacob H. Osborne, receiver for the Central Illinois Banking and Savings Association, John J. Chambers, Wm. E. Veitch and Harriet B. Dewees, defendants therein, and alleging that the Equitable Life Assurance Society of the United States on the 31st day of August, 1888, issued a life insurance policy on the life of Samuel Dewees for $5,000, to be paid to Harriet B. Dewees, his wife, if she should be living at the time of his death; also that the Provident Life Savings Assurance Society of New York, on the 28th day of December, 1888, had issued a life insurance policy for the sum of $5,000 upon the life of Samuel Dewees, to be paid to Harriet B. Dewees if she should be living at the time of his death, and also alleging that the Provident Savings Life Assurance Society of New York, on the 5th day of June, 1889, issued a life policy of insurance for the sum of $10,000 upon the life of Samuel Dewees, to be paid to Harriet B. Dewees, if she should be living at the time of his death.

It is averred in the bills of interpleaders that on August 19, 1890, the complainants were notified that Harriet B. Dewees, the beneficiary named in each of the policies of insurance, assigned her interest in the same to Wm. E. Veitch, cashier of the Central Illinois Banking and Savings

Association; that in August, 1893, the Central Illinois Banking and Savings Association became insolvent, and a bill was filed in the Circuit Court of Morgan County to wind up the business of the association, and the defendants, John J. Chambers and Wm. E. Veitch, were appointed receivers and qualified as such. Veitch resigned, and Chambers was appointed and qualified as sole receiver, and afterward he resigned, and the defendant, J. H. Osborne, was appointed and qualified, and is still such receiver. Wm. E. Veitch, as cashier of the Central Illinois Banking and Savings Association, assigned the policies of insurance to himself and Chambers as receivers, and then assigned them to Chambers as sole receiver, and he assigned them to Jacob H. Osborne, the present receiver. For several years prior to 1893, the Central Illinois Banking and Savings Association carried on a general banking business. It was a co-partnership composed of several persons. Certificates of stock were issued to each partner, showing the interest each partner had in the firm. Samuel Dewees was a small stockholder. Wm. E. Veitch was cashier. The co-partnership was insolvent. Samuel Dewees died December 22, 1896. Complainants aver that they were notified soon after his death that his wife, the beneficiary, claimed the money due on the three policies of insurance, and that her assignment of them was void. J. H. Osborne, receiver for the Central Illinois Banking and Savings Association, also demanded the money due on the policies. The complainants, the insurance companies, admit there is $20,000 due under the policies, and are willing to pay the same to whoever is entitled thereto. They aver there is no collusion and that each party threatens to bring suit. Complainants asked the defendants be ruled to interplead, and tendered the $20,000 to the court. The defendants were ruled to interplead. The defendants each filed answers in each case. The answers of the defendants, respectively, in each case, are the same. The defendant Harriet B. Dewees, in answering avers that she is the beneficiary in the policies, and is entitled to the funds; that she assigned the policies as col-

lateral security for her husband's indebtedness to the bank, in consideration that the bank would grant an extension of the time of payment; that such extension was made, and when the indebtedness matured the bank renewed the notes, and thereafter repeatedly extended the time of payment of said indebtedness by taking renewal notes without her knowledge or consent, whereby the policies were released as such collateral security.

J. H. Osborne, receiver for the Central Illinois Banking and Savings Association, alleges that the bank for which he is receiver, did a general banking business for many years prior to August 25, 1893, at Jacksonville; that Samuel Dewees was an extensive farmer and dealer in stock, and was a heavy borrower from the bank; on August 19, 1890, he was indebted to the bank over $42,000; that the bank was demanding payment or security; that in order to partially secure such indebtedness, Samuel Dewees and his wife, Harriet B. Dewees, the beneficiary therein, both assigned such insurance policies to Veitch as cashier, and copies of such assignments were delivered to the insurance companies, and after such assignments the bank paid all premiums on said policies; that the bank became insolvent and Chambers and Veitch were appointed receivers therefor, and the policy came into their hands as assets of the bank; that J. H. Osborne became and now is receiver, and the policies were assigned to him by his predecessors, having paid all premiums accruing on such policies; that at the time the bank failed Samuel Dewees owed it $27,024.74, and it had paid as premiums $3,527.05 and Samuel Dewees was insolvent, and the only security the bank had, over the insurance policies; that Samuel Dewees died December 19, 1896; that thereupon the money due on such insurance policies became due to Osborne as such receiver, and that proper proofs of death were sent the companies; that on the date of the death of Samuel Dewees there was due from him to J. H. Osborne, as such receiver, $20,852.56, and that the receiver, Osborne, demands the amount due on the policies, and prays for an order to that effect. The other defend-

ants filed disclaimers, setting up that they had no interest in the subject-matter now in controversy.

These three cases were by agreement consolidated and tried together. They were referred to the master to state the account, and report his conclusions of law and fact.

The master made his report finding, after stating the accounts, that the three policies of insurance involved in this suit were assigned and pledged to the Central Illinois Banking and Savings Association, as collateral security for any indebtedness then existing, or that might thereafter exist from Dewees to the bank; that the indebtedness was then in the shape of short notes; that in consideration of such assignments the bank agreed it would not press their collection, but would extend the time of payment of the whole indebtedness then existing; that no definite time was agreed upon, but to be at the discretion of the bank; that at the time of the assignment and delivery of the policies, it was agreed that all the notes then existing, and all the notes that might thereafter be given, whether renewal notes or notes for new indebtedness, should, as they matured, be taken up and new notes given, and that such renewals should continue at the pleasure of the bank, and that the policies should be held as collateral therefor in whatever shape the indebtedness might be; that after the policies were assigned the bank made no new contract for extensions; and that no new contract was made when the renewal notes were given; and that the policies assigned as collaterals were not released by the bank taking renewal notes under the contract of assignment; and that all the money derived from the policies should be paid to J. H. Osborne, as receiver for the Central Illinois Banking and Savings Association, to apply on the indebtedness of Samuel Dewees to the bank. To this portion of the master's report the court sustained exceptions made by Harriet B. Dewees, and entered a decree finding the equities with Harriet B. Dewees, and ordered the money that was deposited in court by the complainants in the interpleaders, derived from the policies of insurance, to be paid to her. From this order the appellant appeals, and brings the case to this court.

The fact that the written assignments of the policies executed by Harriet B. Dewees, appellee herein, were absolute, and vested the legal title to them in Wm. E. Veitch, cashier in the Central Illinois Banking and Savings Association, upon their delivery, is not controverted. The question is, what verbal arrangement was made at the time the policies were assigned and what was the consideration therefor ?

It is contended on the part of appellant that Samuel Dewees was indebted to the bank in the sum of $42,000, and this indebtedness was evidenced by several notes made by Dewees to the bank, some of which were due, and the bank was demanding payment of, or security for, this indebtedness, and that he went to his wife and procured assignment of the policies to Wm. E. Veitch, cashier of the bank, and she delivered them to him, and he delivered them to the bank, at which time it was agreed that they were to be held by the bank, not only as collateral security for his then existing indebtedness, but for all renewals and extensions, by notes or otherwise, of the then existing debts or of after-created indebtedness. In other words, that these collaterals were to be held by the bank not only for what he then owed but what he might subsequently become indebted to the bank.

The appellee contends that the policies were assigned to Veitch as cashier of the bank as collateral for the then existing indebtedness of Samuel Dewees to the bank, and to procure an extension for the payment thereof. The only person testifying to this transaction are the appellee and Wm. E. Veitch, who, at that time, was cashier of the bank.

The testimony of Wm. E. Veitch fully sustained the contention of the appellant; we think it is also sustained by the proof; appellee claims and testifies that he only assigned the policies as collateral for what Samuel Dewees then owed the bank, and to procure an extension of the time of payment. The object of placing these collaterals with the bank was to enable Samuel Dewees to rescue himself from

financial ruin.  He was indebted to the bank in the sum of
$42,000.  It is the practice of banks to not grant extensions,
except for a limited time, on maturing paper, and as appel-
lee in her contention does not fix the time the extension of
this paper was to run, the presumption would obtain it
was to run for such limited time.  This would be of no real
benefit to him if he were to be closed out within a short
time.  The fact that the appellee allowed the policies to
remain with the bank long after she claimed they were
released as collaterals, and allowed the bank and the receiv-
ers to pay about $3,000 of premiums maturing while these
policies were in their hands, and that she made no claim to
these policies from the persons to whom they were assigned
for the bank until after her husband's death, and during
this time they had been used as collateral to secure the
indebtedness that existed at the time of the assignments
and after-accruing indebtedness, and Samuel Dewees had
reduced his indebtedness from $42,000 to about $27,000—
these facts and circumstances support appellant's contention.
We think the rule announced in the case of Norwood et al.
v. Guerdon, 60 Ill. 253, applies with equally as great or
greater force in this case than in that.  In this case they
both participated in the assignments of the policies to the
bank, and they are delivered by the wife to the husband,
clothing him with the power to go to the bank and pledge
these policies and obtain a credit with which in five years
he reduces his indebtedness some $15,000.  It is admitted
these assignments are valid.  It is not contended the appel-
lee contributed, in paying the premiums on these policies,
anything out of her separate estate.

The bank in good faith gave her husband credit and
money on these assignments, and she ought not now be
heard to repudiate the arrangement made by her husband.
As the above view disposes of this case we do not deem it
necessary to pass upon the other questions raised in the
case.

The court below should not have entered a decree order-
ing the money paid into court by the complainants in the

bills of interpleader, due on the policies of insurance, to be paid to appellee.

The case is reversed and remanded with direction to enter a decree ordering the money paid into court to be paid to appellant.

Reversed and remanded, with directions.