COLLINS et al. *v.* DAWLEY.

1. A policy of insurance upon the life of the husband for the benefit of the wife may be assigned or pledged by her as collateral security for the debt of her husband, unless prohibited by statute.

2. The renewal of a note for which collateral is pledged is not an extinguishment of the debt, and is not payment in that sense so as to discharge the claim of the creditor on the collateral security, without an agreement to that effect.

## *Error to Probate Court of Arapahoe County.*

THE plaintiff below had judgment for $606.94. The facts are stated in the opinion.

Messrs. SAYRE, BUTLER & WRIGHT, for plaintiffs in error.

Messrs. BELDEN & POWERS, for defendant in error.

STONE, J. The principal error assigned is that the court below erred in finding the issues for the defendant in error contrary to the law of the case under the given state of facts.

I. N. Dawley, the husband of the defendant in error, borrowed $600 from the First National Bank of Denver, and gave his promissory note for the amount, payable to J. H. Morrison who indorsed the same to the bank.

In order to indemnify the said Morrison, as well as to secure the bank in the payment of the note, he deposited with the said bank a policy of insurance on his life for the sum of $2,000, for the benefit of his wife, and also an agreement signed by his wife, the defendant in error, in the nature of an assignment of the said policy, which agreement was in the following words :

"Agreement : It is hereby understood and agreed, by and between Olive P. Dawley and J. H. Morrison, that in the event that the amount of the life policy, No. 37,389, of the Mutual Life Insurance Company of New York, on the life of Isaac N. Dawley, for $2,000, should be realized before

the payment of a certain note for $600 made by Isaac N. Dawley and payable to the said J. H. Morrison due March 30, 1873, then and in that case, so much of the amount sufficient to cancel the said note shall be retained and paid to the said Morrison, or to the payee or payees of said note whomsoever they may be.

(Signed)                                   OLIVE P. DAWLEY.

Attest. I. N. DAWLEY.

DENVER, *January* 18, 1873."

About fifteen months after the maturity of the note, the said Dawley made a payment to the bank of $100 and gave a renewal note for the balance due, which was $500, his brother J. M. Dawley signing the note as surety, the policy of insurance still remaining at the bank as collateral security for the amount due according to the understanding of the parties. The rate of interest on this note was the same as on the first note. No payment had been made on this note when the said I. N. Dawley died. After his death, the defendant in error obtained a loan of $1,000, from the plaintiffs in error upon assigning to them the policy with authority to collect the amount due thereon.

She represented that the policy was lost, and gave, as she was required to do, an indemnity bond to the insurance company, who thereupon agreed to pay the policy within a year and a day. Plaintiffs in error soon afterward found that the policy was in the hands of the First National Bank, the cashier of which offered to deliver it on condition that the plaintiffs in error would pay the amount of the note yet due. This was agreed to, and the policy forwarded and paid in full, from the proceeds of which the plaintiffs in error deducted the amount which they had paid the First National Bank in discharge of the note, and also deducted the amount of their loan to Mrs. Dawley, and remitted her the balance. She brought suit in assumpsit against the plaintiffs in error to recover the amount so paid to the First National Bank. The declaration contained the common counts

only for $2,000, and the defendants below pleaded *non assumpsit* and set-off of the full amount declared for. The trial was to the court below, which rendered judgment against the plaintiffs in error for the amount paid to the First National Bank, and to reverse that judgment the said plaintiffs prosecute their writ to this court.

Two questions arise for consideration upon the facts in this case:

*First.* Could the wife assign, or pledge as collateral, the insurance policy, to secure the debt of her husband? and,

*Second.* Did the renewal of the first note operate to release such security?

That a policy of insurance upon the life of the husband for the benefit of the wife, may be assigned or pledged as collateral security by her for the debt of her husband, unless prohibited by local statute, is, we think, settled by the great weight of authority. The policy was a writing obligatory for the payment of money, and may be assigned at law as well as in equity. *DeRouge* v. *Elliott*, 23 N. J. Eq. 486; *Charter Oak Ins. Co.* v. *Brant*, 47 Mo. 419; *Chapin* v. *Fellows*, 36 Conn. 132; *Merrill* v. *N. E. Mut. L. Ins. Co.*, 103 Mass. 245; 1 Schouler's Pers. Prop. 709–710; 2 id. 672–3; Bliss on Ins., §§ 341–349. And the assignment may be for a moiety of the sum due upon the policy. *Pomeroy* v. *Manhattan L. Ins. Co.*, 40 Ill. 398.

A point is raised by counsel for defendant in error, that by the laws of the State of New York, where the policy was executed, it was not assignable, but since the laws of New York touching this point are not set out in the record before us, we are unable to pass upon this point, and must allow the usual presumption to govern in such case. *Kline* v. *Baker*, 99 Mass. 254.

The laws of Colorado, placing a married woman upon the same footing as a *femme sole* with respect to her own property, must, to that extent, govern in this case.

As to the second point, we think the security afforded the First National Bank by the policy as collateral, was

unimpaired by the renewal of the first note. It is claimed by counsel for defendant in error, that she stood in the position of a surety, and that the payment of the $100 mentioned, and the giving of the new note for the balance due, was a payment of the first note, and therefore operated to discharge her liability as such surety. Had the policy not been deposited with the bank, the assignment being made technically to Morrison, and for whose personal indemnity it was not necessary to actually deliver the policy (1 Schouler's Pers. Prop. 710), a very different question would be presented. But in addition to the assignment for the indemnity of Morrison, the policy was delivered to the bank and by it retained. The bank was the real creditor, Morrison being merely an accommodation indorser, and his indorsement, which is shown by the testimony of Moffat, who says: "The note was signed by I. N. Dawley and J. H. Morrison," made the bank the payee of the note. We must, therefore, take this delivery of the policy to have been, by intendment, a deposit in the nature of a pledge as collateral security for the payment of the *debt.* This intention is further evidenced by the fact that no demand was made for the re-delivery of the policy to the assignor until after the death of I. N. Dawley, the assured. Such was plainly the intention of the parties to the transaction. *Norwood* v. *Guerdon,* 60 Ill. 253.

The renewal of a note for which collateral is pledged is not an extinguishment of the debt, and is not payment in that sense so as to discharge the claim of the creditor on the collateral security, unless there is an agreement to this effect. *Pinney* v. *Kingston,* 46 Vt. 83.

A note in renewal is a continuation of the debt merely. *Moses* v. *Trice,* 21 Gratt. 556; 1 Schouler's Pers. Prop. 514.

The transaction is to be governed by the real intent of the parties. True, the defendant in error deposes that she never deposited the policy with the bank, nor authorized any one to do so for her, but she also deposes that she never assigned the policy, nor signed any instrument or

agreement of any kind whatever, relating to the policy, and in this statement she is contradicted by Moffat, the cashier of the First National Bank, and by Collins, her own witness, who also swears to the genuineness of her signature to the agreement. She evidently knew that the policy was at the First National Bank, and must also have known how it came to be there, for although when she assigned it to Collins, Snider & Co., for collection to secure her loan, she represented it as lost or mislaid, yet in her deposition she contradicts this by stating that after her husband's death she repeatedly sent to the bank to get the policy.

Upon the whole evidence we must hold that it was competent for the plaintiffs in error, as defendants below, to plead set-off, as they did, of the amount they had paid to the First National Bank, and show such payment in discharge of the last note, as so much money paid to the use of the defendant in error, the plaintiff below. She was paid out of the proceeds of the policy, all that was due her as assignor. The plaintiffs in error, as her agents to collect the policy, though not specially authorized to pay this note, were, nevertheless, under their general authority, invested with all medium powers necessary to be used for the accomplishment of the object of the principal power. 1 Chitty's Contr. (11th ed.) 140.

In paying the note they were discharging a valid lien upon the policy, and were, therefore, warranted in acting to avoid litigation to the detriment of their principal, and in such act they should be protected by the courts.

The judgment of the court below was not warranted by the law applicable to the facts in the case, and must be reversed.

*Judgment reversed.*