First Nat. Bank of Pueblo v. Newton, Impleaded, etc.

Defendant Newton was a silent partner of the other two defendants, who were ostensible partners. September 15, 1882, a ninety-days note, bearing the firm name, was given to the plaintiff for $1,500. The firm name was composed of the names of the two ostensible

partners. October 2, 1882, defendant Newton retired from the firm, and another silent partner took his place, but no notice of the change was given and the firm name remained the same. December 16th the note was taken up, marked "Paid" by plaintiff's cashier, and a new note given therefor, bearing the firm name. The cashier testified that the new note was received in payment of the old one. *Held*, in the absence of evidence of an agreement that the new note should be accepted in payment of the old one, the members of the original firm were liable for the debt.

*Error to District Court, Pueblo County.*

THE facts are stated in the opinion.

Mr. C. E. GAST, for plaintiff in error.

Messrs. PITKIN and RICHMOND, for defendants in error.

MACON, C. In the summer and fall of 1882 the defendants in error were partners, doing business in the city of Pueblo, under the firm name of Todd & Fairchild; defendant Newton being a silent part-member, and Todd & Fairchild the ostensible members. During the months of August and September of that year the firm had overdrawn its account with plaintiff in error to the extent of $952, and on the 15th day of September of the same year executed a note to the plaintiff, signed by P. B. Fairchild and S. E. Todd, and with the firm name of Todd & Fairchild, for $1,500, due at ninety days, bearing interest at the rate of one and one-fourth per cent. per month, to secure the overdraft, as well as an additional credit, then and there extended the firm by the bank, of $542. On October 2, 1882, Newton withdrew from the firm, and one G. J. Piper took his place therein; but no change was made in the firm name. Newton gave no notice of his withdrawal, nor did the firm give any notice of the association of Piper in the partnership; at least none was given to the plaintiff in error. This note of September 15th was not paid at maturity in money, but Todd & Fairchild executed another note to

the bank for the same sum, signing it with the firm name, and with the individual name of P. B. Fairchild, which note was due in ninety days, bore interest at the same rate as the first, which the bank accepted in lieu of the first, surrendering the latter to Todd & Fairchild, and stamping it "Paid." Plaintiff in error was ignorant at this time of the fact that Newton had retired from the firm, or that Piper was a member thereof, and would have refused to accept the new note and surrender the old had it (plaintiff) been advised of these facts. The last note has never been paid.

In September, 1883, the plaintiff in error brought suit in the district court of Pueblo county against defendants in error upon the original indebtedness, averring that on the 15th day of September, 1882, it loaned to said defendants the sum of $1,500, and that defendants promised to repay the said sum within ninety days, with interest at one and one-fourth per cent. per month; and that said defendants had not paid that sum, nor any part thereof, except the interest up to the 16th day of December, 1882.

Defendant Newton answered (the other defendants not being served with summons), and denied that he was indebted to the plaintiff in any sum for any money loaned to the defendants, or either of them; admitted that he was a member of the firm of Todd & Fairchild on the 15th day of September, 1882, but that he was solely a silent partner in the firm; that his connection therewith was unknown to all persons dealing with the firm; and that when said loan was made, on the 15th day of September, 1882, the plaintiff had no notice or knowledge whatever of his connection with said firm, and that the loan was made without any knowledge or notice on the part of plaintiff that he (Newton) was or would be personally liable for the repayment of the whole or any part of the said loan, as a member of the firm or otherwise; that the loan was made by plaintiff upon the sole credit and responsibility of S. E. Todd, Jr., and P. B. Fairchild; fur-

ther avers that prior to and on the 15th day of September, 1882, and when said loan was made, an agreement existed between the defendant and the other members of the copartnership that no promissory notes should be made, or any firm indebtedness contracted, by any member of the said firm, which would in law bind the said firm, without first obtaining the consent thereto of each and every member thereof; that such agreement was in full force and effect at the time of said loan; that said loan was effected in violation of said agreement, and the same was done without the knowledge or consent of defendant Newton, and against his will.   Defendant further alleges in his defense that the said loan was obtained by the firm of Todd & Fairchild, and in its name, for the sole and individual use and benefit of said Fairchild, and that defendant had no notice that said loan had been effected until long after the firm had been dissolved by his withdrawal therefrom, and after the affairs thereof were fully wound up, completed and adjusted between him and the other members of the firm; further avers that, on the 15th day of September, 1882, said Fairchild negotiated said loan, and procured the $1,500 from plaintiff in the name of, and professedly on behalf of, said firm, but in fact for the sole use and benefit of said Fairchild; "that, as the consideration for such loan upon the part of plaintiff, it (the plaintiff) then and there demanded from and required of said P. B. Fairchild the execution and delivery of a promissory note, to be then and there made by said P. B. Fairchild in the name of said firm, and as a member of the said firm of Todd & Fairchild; that the said note was then and there executed by the said Fairchild to the plaintiff, before the payment of any part of the said sum of $1,500; that, in pursuance of said requirement on the part of the plaintiff, the said Fairchild then and there made, executed and delivered to plaintiff a promissory note, and the said Fairchild and S. E. Todd then and there signed, as joint makers, the

said firm name of Todd & Fairchild, and the individual names of P. B. Fairchild and S. E. Todd, Jr., by the terms of which note the said makers thereof thereby promise to pay to the order of the plaintiff the said sum of $1,500, in ninety days from date thereof, with interest thereon at the rate of one and one-fourth per cent. per month from date until paid; that thereupon, on the delivery of said note to the plaintiff, it (the plaintiff) then and there paid the said P. B. Fairchild, or his representative, the said sum of $1,500, the same being then and there the identical indebtedness and loan referred to in plaintiff's said complaint, and the said note was then and there accepted by the plaintiff in discharge of said indebtedness mentioned in said complaint." It further avers that on the 2d day of October, 1882, the said firm, composed of S. E. Todd, Jr., P. B. Fairchild, and George A. Newton (as silent partner), was dissolved by mutual consent, the said defendant Newton retiring therefrom, and said co-partnership was reconstituted by the association of G. J. Piper in the firm, which new firm became the successor of the old, with the same firm name of Todd & Fairchild; that at the maturity of said note the new firm, on the 16th day of December, 1882, at the request of the plaintiff, executed another promissory note for the sum of $1,500, payable ninety days after date, to the order of the plaintiff, with interest at one and one-fourth per cent. per month after date until paid; that said promissory note, last and aforesaid, was signed by the firm of Todd & Fairchild, and by P. B. Fairchild in his individual capacity, and as joint maker; that said note was then and there accepted by the plaintiff in full payment and discharge of the first said note, the said firm paying at that time the interest accrued on said first note, and at the same time plaintiff marked upon the note of September 15, 1882, the word "Paid," and delivered the same to the makers thereof; and the last-mentioned note is still outstanding, and in full force and effect, and held and owned by the plaintiff.

To this answer plaintiff filed its replication; averring that at the time of said loan it was informed and believed that the defendant Newton was a partner in said firm; professes ignorance of any agreement between the members of the firm as to giving of promissory notes, or of contracting the firm's indebtedness, so as to bind the firm; denies that said loan of $1,500 was obtained for the sole individual use and benefit of said Fairchild, but that the same was made for and on behalf and for the use and benefit of said firm; denies that the last note was given and accepted by the plaintiff in full payment and discharge of the note of September 15, 1882; and avers that the said last note was executed merely in renewal of the previous note, and was not intended to be nor was it accepted in payment or discharge thereof.

In September, 1883, the cause was tried to the court without a jury, and the testimony taken in the case shows these facts: That defendant Newton was a silent partner in the firm of Todd & Fairchild; that he retired from the copartnership on the 2d of October, 1882; that the plaintiff in error was not informed by either Newton, Todd or Fairchild of Newton's withdrawal; that no notice of the dissolution of the firm, or of the association of Piper with the firm, was given; that the note of September 15, 1882, was not paid at maturity in money; that a new note, executed on December 16, 1882, was taken by plaintiff in error in ignorance of the fact that Newton was not still a member of the firm, and that Piper was a member; that the note of September 15, 1882, was exchanged for that of September 16th, stamped "Paid," and surrendered to the makers by plaintiff in error, in the belief that no change had occurred in the firm; that the indebtedness of $1,500, for which the first note was given, was in part, to wit, to the extent of $952, an overdraft by the firm, occurring some time before the 15th of September; the balance of the $1,500, to wit, $548, was a credit extended to the firm by the plaintiff; that Fairchild did not negotiate the loan, nor

did he receive individually any part of it; that the plaintiff in error, at the time of the overdraft, and at the time of the execution of the two notes spoken of, was ignorant of any agreement or arrangement between the members of the firm to the effect that no firm notes or firm indebtedness should be contracted by any member thereof, without the consent of each member.   Nothing appeared in the evidence to show that, since the last note was executed, any settlement had been made between defendant in error and his copartners.   Plaintiff in error, at the trial, produced and offered to surrender the note of December 16, 1882.

Whether the last note was taken in payment and discharge of the indebtedness there is nothing to show further than the testimony of one Robert Lytle, cashier of plaintiff in error, who was called and examined at the trial (and who was the only witness examined), and testified, in answer to cross-examination, as follows: " *Question*. Is this the note that was taken in satisfaction of the old one? *Answer*. Yes, sir.   *Q.* When you surrendered this note of September 15th, and stamped it 'Paid,' you surrendered that and took a new note in satisfaction of the existing indebtedness, did you not?   *A.* Yes, sir. *Q.* So at the time you gave up this note of September 15th and marked it 'Paid' you received the interest on it, which is $57.50, and received the new note in payment of the note of September 15th?   *A.* Yes, sir; they gave us a check for $57.50 on the Stock-Growers' National Bank, and the new note."

Upon these facts the court gave this opinion: "And the court being of the opinion that the surrender of the note of September 15, 1882, and marking it 'Paid,' and receiving the new note of December 16, 1882, constituted a payment in law of the original indebtedness;" and found the issues for the defendant, and entered judgment accordingly,— to which plaintiff excepted, and comes to this court by a writ of error, assigning two

errors, both of which are resolvable into one, and they go directly to the opinion of the court as to the legal effect of the surrender of the old note, marking it 'Paid,' and receiving the new one.

It is insisted by plaintiff in error, and contested by defendant, that a silent partner, when discovered, may be held liable to the debts of his firm contracted while he was such member; and that whether plaintiff in error knew or suspected that defendant Newton was a copartner in the firm of Todd & Fairchild is immaterial,— he can be held for the debts of his firm; that whether the credit was given to him or not is immaterial, if the fact is afterwards discovered that he was at the date of the loan in this case one of said firm.

As a general proposition there can be no doubt of its soundness. Persons dealing with a copartnership trust it as a whole as well as each member thereof. They are under no obligations to inquire who constitute the firm, and it is common that the firm sees fit to conceal the names of some of its members. If one deal with a copartnership, under the impression or belief that certain parties compose it, and afterwards discover his error, he may lose by the mistake, but cannot be heard to complain. On the other hand, if persons in dealing with a copartnership are mistaken in supposing that certain persons are not members thereof, and afterwards discover their mistake, they may have the benefit of the mistake in their increased security.

In *Winship v. Bank of the United States*, 9 Curt. Dec., 466, Marshall, C. J., says: "The counsel for the plaintiff in error supposes that, though these principles may be applicable to an open and avowed partnership, they are inapplicable to one that is secret. Can this distinction be maintained? If it could, there would be a difference between the responsibility of a dormant partner and one whose name was to the articles. But their responsibility in all partnership transactions is admitted to be the

same. * * * The responsibility of unavowed partners depends on the general principles of commercial law, and not on the stipulations of the articles."

In *Bigelow v. Elliot*, 1 Cliff. 38, it is said that "persons who jointly participate in profits of trade or business ostensibly carried on by another for his sole use and benefit, within the principles already explained, are equally liable, when discovered, with the ostensible and active owner, to all creditors of the concern whose debts were contracted during the time of such participation, without the knowledge of the same, or of the actual relations between the parties at the time the credit was given; and that liability exists notwithstanding the parties may have privately stipulated that they shall not be partners, and in contemplation of law really are not such as between themselves. * * * Dormant or secret partners are held liable, under such circumstances, partly on the ground that every man who has a share in the profits of a trade or business ought also to bear his share of the loss, and partly on the ground of policy and necessity to prevent bad faith in secret arrangements; as all experience has shown that if the rule were otherwise third persons might be exposed to numberless frauds."

In *Bourdeaux v. Martinez*, 25 La. Ann. 169, the doctrine was laid down in this language: "The liability of secret or dormant partners in commercial partnerships, in all cases like the present, is so well established, and so univerally recognized, that authorities need scarcely be referred to." *McDonald v. Clough, ante,* p. 59.

In the case of a dormant or secret partner, the credit is manifestly given only to the ostensible partner, for no other partner is known. Still, however, it is not treated as an exclusive credit; for the law in all cases of this sort founds its decision upon the ground that the creditor has had a choice or election of his debtor, which cannot be where the partner is dormant or unknown. The credit, therefore, is not deemed exclusive, but binding upon all

for whom the partner acts, if done in their business, and
for their benefit, as in cases of agencies for an unknown
principal.

In the case of *Seawell v. Payne*, 5 La. Ann. 255, this
court said, in relation to deceit practiced by one partner
upon another: "The validity of the transactions between
the bank and the parties who effected the loan and con-
sented to its application is not affected by the state of
affairs between the partners *inter se*.  A deceit between
partners has nothing to do with their obligations towards
third persons, who are not privy to it, and is no evidence
of any connivance on the part of the bank."

These decisions — and many more to the same effect
might be cited — cover both the ground of the liability of
a silent partner and the inefficacy of secret arrangements
between partners to affect their customers dealing with
them in ignorance of such secret arrangement; and as
nothing appeared in evidence to show any secret arrange-
ments between the parties in this case, as is alleged in
the answer, or that plaintiff in error had knowledge of
any such, if they existed, we must look to other rules of
law upon which to sustain the judgment in this case, if
it is to be sustained.

The only point upon which defendant in error relies, in
support of the judgment of the court below, which the
evidence in the case authorized him to urge, is that the
note of December 16, 1882, was an extinguishment of
the note of September 15, 1882, and of the original in-
debtedness.  In order to understand the effect of this
transaction, it is necessary to ascertain what the cases
have held to be the legal effect of the giving of a promis-
sory note for a precedent debt.  In this case the last note
was given as a renewal of the first, by which act the first
*note* was extinguished, and all right of action upon the
same was extinguished with the note.  The *note* was but
evidence of the indebtedness, not the indebtedness itself.
While the note was current, the right of action upon the

original indebtedness was suspended, and no suit could have been maintained upon such original debt. Byles, Bills, 304; *Okie v. Spencer*, 2 Amer. Lead. Cas. 275; *Stedman v. Gooch*, 1 Esp. 4; *Price v. Price*, 16 Mees. & W. 231, 239.

The giving of the debtor's own note, bill or check, or the note, bill or check of a third person, to meet an antecedent indebtedness, is *prima facie* not a payment or discharge of such indebtedness. *Collins v. Dawley*, 4 Colo. 141; *Hart v. Boller,* 15 Serg. & R. 162; *Sutton v. The Albatross*, 2 Wall. Jr. 372; *Woodward v. Miles*, 4 Fost. 289; *Fickling v. Brewer*, 38 Ala. 685; *White v. Jones*, 38 Ill. 159; *Matthews v. Dare*, 20 Md. 248; *Schilling v. Durst*, 42 Pa. St. 126; *Smith v. Smith*, 7 Fost. 244; *McMurray v. Taylor*, 30 Mo. 263; *Hayes v. Pollock*, 1 Pa. St. 376; *Kephart v. Buttcher*, 17 Iowa, 240; *Welch v. Allington*, 23 Cal. 322; *Peter v. Beverly*, 10 Pet. 562, 568; *Sheehy v. Mandeville*, 6 Cranch, 253; *The Kimball*, 3 Wall. 45.

In the last case, Field, J., speaking for the court, holds the following language: "By the general commercial law, as well of England as of the United States, a promissory note does not discharge the debt for which it is given, unless such be the express agreement of the parties. It only operates to extend until its maturity the period of the payment of the debt. The creditor may return the note when dishonored, and proceed upon the original debt. The acceptance of the note is considered as accompanied with the condition of its payment. Thus it was said as long ago as the time of Lord Holt that 'a bill shall never go in discharge of a precedent debt, except it be a part of the contract that it should be so.' Such has been the rule in England ever since; and the same rule prevails, with few exceptions, in the United States. The doctrine proceeds upon the obvious ground that nothing can justly be considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. That a mere promise

to pay cannot of itself be regarded as an effective payment is manifest."

The presumption that the note of the debtor, or of a third person, given for an antecedent debt, is not payment of the same, is so strong that it is held that though a receipt in full be given at the same time that such note is accepted by a creditor, the same is construed to be upon the condition that the note shall be paid at maturity. *McIntyre v. Kennedy*, 29 Pa. St. 448; *Perit v. Pittfield*, 5 Rawle, 166; *McGinn v. Holmes*, 2 Watts, 121; *Tobey v. Barber*, 5 Johns. 68; *Johnson v. Weed*, 9 Johns. 310; *Roget v. Merrit*, 2 Caines, 117; *Maze v. Miller*, 1 Wash. C. C. 328; *Harris v. Lindsay*, 4 Wash. C. C. 271; *Peter v. Beverly, supra; Glenn v. Smith*, 2 Gill.& J. 494; *Berry v. Griffin*, 10 Md. 27; *Wheeler v. Schroeder*, 4 R. I. 383, 389; *Street v. Hall*, 29 Vt. 165; *Johnson v. Cleaves*, 15 N. H. 332; *Sutton v. The Albatross, supra; Sheehy v. Mandeville, supra.*

The burden of proof is upon the debtor to show that such note was taken as payment of the original indebtedness. *Noel v. Murray*, 13 N. Y. 168; *Leas v. James*, 10 Serg. & R. 307, 315; *White v. Jones*, 38 Ill. 159; *Woodward v. Miles*, 4 Fost. 289.

If, then, as the authorities clearly hold, a note is not to be taken as payment of a debt it evidences, without further proof that it was so intended, does the evidence in this case make out that fact for defendant in error? At the outset of this inquiry it may be said that this court will not disturb the verdict of the jury, nor the finding of the court, on the evidence, except in extreme cases. This rule we have no disposition to set aside or evade; but the court below did not find that the evidence showed an *agreement* to accept the new note in payment of the debt of which the old note was evidence, but that, in the absence of any agreement to that effect, as matter of law, the transaction amounted to a payment of the debt. Hence there is no necessity for a review of

the finding of the facts upon the evidence by the district court. The only question is, did that court err in holding that the transaction, by which the new note was substituted for the old, amounted in law, independently of agreement and intention, to a payment of the debt due plaintiff in error from the firm of Todd & Fairchild, on or before the 15th day of September, 1882. In the light of the decided cases upon this question, the district court unquestionably erred in its ruling upon this point.

But it is insisted by defendant in error that the evidence of the witness Lytle clearly establishes that the second note was received by the creditor in full payment, satisfaction and discharge of the first. We do not think the testimony of Lytle warrants such a conclusion. This testimony shows the usual bank transaction, where a party, unable to pay his note at maturity, takes it up and gives a new one. While the second note was received in lieu of the first, it does not appear that it was distinctly understood and agreed that it was in satisfaction of the original indebtedness in any such sense as destroyed its existence, or precluded an action upon it.

The only other contention of defendant is that, by reason of the surrender of the note of September 15th, and stamping it "Paid," plaintiff in error is estopped to proceed against Newton upon the original indebtedness; because Newton, having settled with his copartners upon the basis of their having paid this note, which he found in their possession, cannot now be called upon to pay it to the plaintiff in error. It is unnecessary to enter into a discussion of this proposition, because there is no evidence in the record that any settlement has ever been had between Newton and his copartners upon any such basis, and, in the absence of such evidence, a discussion of the rules of law which might govern the case, if such settlement had been made, would be outside of the issue, and would have no binding force in any subsequent case.

The district court erred in rendering judgment for the defendants, and the judgment should be reversed.

RISING and STALLCUP, CC., concur.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is reversed and the cause remanded.

*Reversed.*