SHEETS, PLAINTIFF IN ERROR, v. SHEETS, DEFENDANT IN
ERROR.

1. INSURANCE—INSURABLE INTEREST.
A creditor has an insurable interest in the life of his debtor.
2. INSURANCE.
A policy of insurance is a chose in action governed by the same princi-
ples applicable to other agreements involving pecuniary obligations,
and the title of the holder and owner is as absolute as that to any
other property bought or owned by him.
3. SAME.
The owner of a policy of insurance can legally transfer it absolutely, hy-
pothecate it or deal with it in any manner he may see fit, and the
proceeds, if any, are his absolutely.

*Error to the District Court of Arapahoe County.*

Messrs. REDDIN & O'HANLON, for plaintiff in error.

Mr. EDWIN H. PARK, for defendant in error.

REED, J., delivered the opinion of the court.

Plaintiff and defendant had formerly been husband and
wife ; were married in the city of Baltimore in 1877. Were
divorced in 1892. At the time of the marriage plaintiff was
possessed of considerable property, defendant had none and
was badly in debt. The uncontradicted testimony is that
immediately after marriage his wife was furnishing him with
large sums of money for his support and to pay debts that
·he owed previous to marriage. The evidence of the defend-
ant is as follows :

" I paid all the premiums on this policy. I always paid
them ; had to borrow the money ; my children (by former
marriage) loaned me the money over and over again to pay
it. I paid nearly five thousand dollars in premiums on the
policy,—just five thousand. Mr. Sheets borrowed so many
thousand dollars from me to pay his debts before he married

me; I was giving him hundreds of dollars a week, every-
thing I could rake and scrape. I gave him, four months
after I was married, $4,000, between four and five thousand
dollars; I can't remember just the amount now; then in
August, in one day, I gave him $950, and so it went all the
time. The policy of insurance was taken out to secure
that. That is what it was done for, because I had lost so
much money through him.

" Q. State the arrangement that was made between you.
A. I lost so much money through him that he said I could
have his life insured, or he would try and make it up in that
way. I did not think he ever could do it in any other way.
I had his life insured and had everything done ; he did not
attend to it at all. I did. It was from Dr. Clements, a friend
of the family; he didn't know Dr. Clements until I intro-
duced him to him, and he had him examined and I paid the
whole thing myself, and he never paid it at all. If he paid
the first, I gave him the money to pay it, because the poor
man hadn't a cent; he could not buy a shirt unless I gave
him the money; he had nothing. Q. Did he ever pay you
back that $4,000? A. He never paid, never. The purpose
of this insurance was to secure that money to me. It was
for my benefit and my children, and not for him at all; he
never demanded this $1,774 of me; never spoke to me about
it; I never heard of it except right here."

The plaintiff in his testimony said : " I went into bank-
ruptcy, became insolvent in 1879."

In April of that year plaintiff in error applied to and ob-
tained from the Home Life Ins. Co. of New York a policy of
insurance of $10,000 on the life of her husband, the annual
premium being $430. The premiums were paid until 1891,
amounting in the aggregate to over $5,000. It is conceded
that these payments were all made by the wife except the
first; in regard to that the evidence was as follows:

Mr. Sheets : " Mrs. Sheets did not pay all of the premiums.
I paid some. I did not pay all; I paid the first premium,

$400." On cross-examination he said : " I did not pay any other than the first premium out of my own pocket."

She : " If he paid the first, I gave him the money to pay it, because the poor man hadn't a cent. He could not buy a shirt unless I gave him the money ; he had nothing."

The fact that he was insolvent and went into bankruptcy about that time, as testified by himself, would support the truthfulness of the statement of the wife.

Not being able to continue the payment of premiums in August, 1891, Mrs. Sheets surrendered the policy to the company for a cash payment of $1,784, which is the subject-matter of this controversy. . The former husband sued the wife to recover it. The case was tried to the court with a finding and judgment for the plaintiff below (defendant in error).

The several errors may, very properly, be consolidated in one—that the court erred in finding for the plaintiff.

In arriving at the proper conclusion, the situation of the parties respectively, and the pecuniary condition of each, the fact that a bankrupt and insolvent man married a widow with property and children, and at the very outset of wedded life commenced to draw large sums from the estate of the wife, without return or contribution, would explain the motive that induced the wife, having confidence in the ability of the husband, if living, to retrieve the past, to protect herself and children from inevitable loss in case of his death, to take up a policy upon his life, the benefits of which, in case of his death, to accrue to herself and reimburse the estate.

The character of the contract of insurance and attendant circumstances are also to be considered. The portion of the policy necessary to be considered is as follows :

" The Home Life Insurance Company by this policy of assurance, in consideration of the representations and agreements contained in the application therefor, and of the sum of four hundred and thirty dollars and — cents, to be paid on or before the delivery of this policy by *Helena A. Sheets*, and of the annual premium of four hundred and thirty dol-

lars and — cents, to be paid at its office in the city of New York, on or before the 22d day of April, at 12 o'clock noon, in each and every year during the continuance of this policy, does assure the life of George T. Sheets, of Baltimore, State of Maryland, in the amount of ten thousand dollars, for the term of life, with participation in profits. And the Home Life Insurance Company does hereby promise and agree to and with the said *Helena A. Sheets* to pay the sum assured (less the balance of the years' premiums, if any, and any indebtedness to the company on account of this contract, or for any loan made on said policy) at its office, in this city, to her, or in the event of her death prior to the death of said George T. Sheets, to the then surviving children of the said Helena A. Sheets, share and share alike, or in the event of no children surviving, then to the *legal representatives of the said Helena A. Sheets*, within sixty days after due notice and satisfactory proof of loss and interest, in accordance with the terms of this contract."

The wife, aside from the marital relation had, by reason of the advances of money made to him, an insurable interest in the life of the husband. *Cammack v. Lewis*, 15 Wall. 643; *Conn. Mut. Ins. Co. v. Luchs*, 108 U. S. 498; *Brockway v. Conn. Mut. Ins. Co.*, 29 Fed. Rep. 766.

The indebtedness of the husband to the wife at the time the policy was obtained is conceded as well as established by evidence, consequently was not open to the charge of being a wagering contract. The husband acquiesced in it and participated in securing it as security and protection to the wife for money borrowed by him.

There is no ambiguity in nor necessity of construing the contract. It is as plain as language can make it. The wife is the applicant and beneficiary. The contract is made with her and in case of her death descended to her children; in absence of children, to her legal representatives. That she had paid at the time of its surrender about $5,000 as premiums was admitted. Admitting that the husband paid one premium with his own money does not change the contract

nor in any way affect it.   *Triston v. Hardy*, 14 Beav. 232;
*Burridge v. Roe*, 1 Y. & C. (Chy.) 183.

Under the circumstances and conditions shown, the wife
was the absolute and sole owner of the policy of insurance;
her title was as absolute as that to any other property bought
and owned by her.   *Triston v. Hardy, supra; Glanz v. Goeck-
ler*, 104 Ill. 573.

"A policy of insurance is a *chose* in action governed by
the same principles applicable to other agreements involving
pecuniary obligations."   Bliss on Life Ins. 506; *Hutson v.
Merrifield*, 51 Ind. 34.

The policy was assigned like any other chose in action, and
the wife being the owner could legally transfer either abso-
lutely or hypothecate it as security and deal with it in any
manner she saw fit.   Bliss on Life Ins. 506; *Hutson v. Mer-
rifield, supra; Ashley v. Ashley*, 3 Simons (Eng. Chy.) 149;
*St. John v. Ins. Co.*, 3 Kern. (N. Y.) 31; *St. John v. Ins. Co.*,
2 Duer (N. Y.) 419; *Palmer v. Merrill*, 6 Cush. 282.

The policy being of this character and subject in the hands
of the owner to all the incidents attaching to any other chose
in action, it was immaterial whether she commuted it for cash
and surrendered it to the company, or sold or pledged it to
a third party.   Having the absolute control, she could by con-
tract with the other party rescind and cancel it, and the pro-
ceeds would be as absolutely hers as though derived from
the sale of any other part of her property.

The fact that the insurance company, through excess of
caution, required the husband to acquiesce in the transaction
and release all claims, and that he did so, could in no way
affect the legal rights of the wife.   The contract was one in
which he had no legal interest or right of control.

The judgment of the district court will be reversed and
the cause remanded.

*Reversed.*