Gunter, J.
In 1866, appellant issued a policy on the life of David Heller, the pertinent part of which is :
“This policy of insurance witnesseth that The Mutual Life Insurance Company of New York, in consideration of the representations made to them in the application for this policy, and of -the sum of twenty-two dollars and eight cents, to them duly paid by Mrs. Fannie Heller, wife of David Heller, merchant, and of the semi-annual payment of a like amount on or before the seventeenth days of May and November in every year during the continuance of this policy, do assure the life.of David Heller of New York, in the county of New York, state of New York, for the*sole use of his said wife, in amount of two thousand dollars for the term of his natural life.
*35 “And the said company do hereby promise and agree to pay the amount of said insurance, at their office in the city of New York, to the assured for her sole use, if living, in conformity with the statute, and if not living to her children or their guardian for their use, in sixty days after due notice and proof of the death of the said party whose life is hereby insured, the balance of the year’s premium, if any, being first deducted'therefrom.”
In 1884, David Heller and Fannie Heller made their promissory note for $600.00, payable to Henry Body, and assigned as collateral security therefor their interest in the policy. At the time they had nine children, who still survive. The note was never paid. It was assigned in 1887 by Body to Metzler; by Metzler, in 1890, to Norman Hagerman; by Hagerman, in 1891, to appellee. Body, Metzler and Norman Hagerman successively, when assigning the note, executed instruments purporting to assign the policy as collateral security for the note, and advised appellant of such assignments. ‘
Mrs. Fannie Heller died July, 1889, leaving surviving, her husband, David Heller, and the nine children above mentioned. February, 1898, appellee, who had possession of the policy under her purported assignment thereof, delivered it to appellant with the request that a paid-up policy be issued therefor. Pursuant to such request appellant, February, 1898, made an indorsement on the policy purporting to make the same a paid-up policy for $1,903.00, and in the same favor as the original. March, 1898, after the policy had been indorsed as paid up, and while it remained in the New York office of appellant, David Heller called there and asked for it, and the policy°was by mistake delivered to him. At the time of the judgment below it was in the possession of the children *36 of David and Fannie Heller. July 2, 1898, appellee wrote appellant:
“Kindly advise me how much cash you will pay for the surrender of paid-up, policy granted in place 47,018 (policy in suit).”
July 8, 1898, appellant replied:
“Acknowledging’ your inquiry for reply; letter J. E. Hagerman, July 2, 1898, paid-up nonparticipating insurance $........ on surrender within six months after default. Cash purchase: $810, if legally surrendered before August 8, 1898. ’?
After the policy had been indorsed as a paid-up policy (February, 1898), and after above correspondence of July 1898, ■ appellee demanded of appellant ■possession of the policy, or payment to her of the sum, $810.00, the amount which the company had agreed to pay for the policy if legally surrendered.
After appellant had'discovered the mistake made in delivering the policy to David Heller in March, 1898, it made unavailing effort to regain possession of it. When appellee demanded possession of the policy it was unable to deliver it, the policy having passed out of its possession, and it refused to make the payment of $810.00 demanded. Thereupon, October, 1898, appellee brought the present action, alleging a conversion of the policy by appellant, that its value was one thousand dollars, and asked judgment for that sum with interest. Trial to the court resulted in judgment against appellant for $898.92, which judgment.contained the provision that it might be satisfied by the deposit in court within thirty days for delivery to appellee of a paid-up polic3r for $1,903.00 on the life of David Heller.
Appellant contends that appellee had no interest in the policy before or after its indorsement as a paid-up policy. This appellee denies and further *37 contends that appellant is not in a position to question her interest.
Decisive of the case is the question -whether or not appellee, Mrs. Hagerman, ever had any interest in the original policy, or in the same after its indorsement as a paid-up policy. If Mrs. Hagerman had no interest therein she sustained no substantial damage by the alleged conversion. The question of her interest in the policy is determined by its terms.
In this ruling the statutes of New York are not considered as a part of the policy, for the reason they are not before us, either by pleading or proof. Looking to the policy, it reads:
“And the said company do hereby promise and agree to pay the amount of said insurance * * * to the assured (Mrs. Fannie Heller) for her sole use if living * * * and if not living to her children or their guardian for their use.” (Italics ours.)
By this provision of the policy, which is not modified by its other terms, payment to Mrs. Heller is expressly conditioned upon her survival of the insured, David-Heller; and in the event she does not, the amount of the policy is to be paid to her children. Her interest was thus made contingent upon her surviving David Heller. She did not survive him, but died in 1889, leaving surviving, David Heller and her nine children, who are still living. With her death ended her contingent interest in the policy, and all rights therein then became vested in her children. When she assigned her interest in the policy to Body in 1884, she had only a contingent interest therein; only this passed by the assignment. When Body a-ssigned to Metzler in 1887, he had only the contingent interest acquired by him of Mrs. Heller, and only this interest could he pass, and did he pass, to Metzler. Intermediate the assignment by Body to Metzler (1887), and the purported assignment (1890), *38 by Metzler to Norman Hagerman, Mrs. Heller having died, and her contingent interest having by such event been determined, Metzler’s interest in the policy was at an end, and he conld pass, and did pass, no interest therein by his assignment, to Norman Hagerman. As Norman Hagerman was without interest in the policy, his assignment thereof to appellee, Mrs. Hagerman, passed nothing. When she delivered the policy to appellant in February, 1898, she had possession of the policy, but no substantial interest therein. Having no interest in the policy, she could be damaged in no substantial manner by the possession of it being withheld. That she had no interest in the policy is sustained by all the authorities:
“If there is a provision that the proceeds of the policy or certificate shall be payable to the wife ‘if living’ and ‘if not living, to her children,’ she will be entitled to the fund if she survives her husband, but in the case she does not survive him, those children who are living at the time of her death will be entitled to recover. * * * Those children who are living at the time of the wife’s death'will be vested with all interest in and right to the fund.” — Joyce on Insurance, § 807.
“Although a life policy, made under the statute for the benefit of the wife of the insured, provides that in case of her death before her husband’s it shall go to the children, and although a statute authorizes a married woman, with her husband’s written consent, to assign such policy, nevertheless, she has no authority, under the statute, to assign an interest expressly reserved in the policy to her children.” — Joyce"on Insurance, § 845.
“Where the policy was payable to the wife, if living, or if not living to the children then living, the death of the wife, is the time which fixes the rights- of *39 the children. ’ ’ — Benefit Societies and Life Insurance (Bacon), Yol. 1, § 294.
‘ ‘ The effect of an assignment of a policy with the consent of the insured is to place the assignee in the same condition and position with respect to all rights and liabilities under it that the insured occupied before the transfer. It amounts only to the substitution for the assured of the assignee as a party to the policy.” — Benefit Societies and Life Insurance (Bacon), Yol. 1, § 299.
In Conn. Mut. Life Ins. Co. v. Burroughs, 34 Conn. 305, the policy was on the life of George Kendall, payable to his wife; Mary E. Kendall, “her executors, administrators or assigns, for her sole use, within ninety days after due notice and proof of the death of George Kendall.” The policy further provided: “And in case of the death of the said Mary E. Kendall before the decease of the -said George Kendall, the amount of said insurance shall be payable after her death to her children, for their use.” After the issuance of the policy Mrs. Kendall made an absolute assignment of the same to one Burroughs. Thereafter she died, leaving a husband — the insured —and one son surviving. Later the husband died. The company filed a bill of interpleader to have adjudicated the rights to the proceeds of the policy making parties thereto the assignee and the son of the beneficiary, Mrs. Kendall. The court held the guardian of the son entitled to the proceeds of the policy, and in ruling, said:
“If it be conceded on'the one hand, that Mrs. Kendall had’an assignable interest in the policy in question, it must be conceded, on the other hand, that that interest was a contingent one, and that the contingency upon which it was to become absolute, never happened.” (Meaning the death of the husband leaving her surviving.)
*40 See also U. S. Trust Co. v. Mut. Ben. Life Ins. Co., 115 N. Y. 152.
Appellee contends that the Colorado cases are against the law as announced in the above authorities, and cites certain cases in support of this contention. An examination of these will show that they are not in conflict with the above authorities, because the question ruled in the above authorities, and decisive of this opinion, is not involved in any one of them. Let us consider the cases cited in support of her contention by appellee.
In Goodrich v. Treat, 3 Colo. 408, S. insured his life in favor of his wife, her heirs, executors or assigns. She died, and two years thereafter the husband, leaving children, issue of • the marriage; Gr., administrator of the estate of the husband, sued T. administrator of the estate of the wife, to recover the proceeds-of the policy paid to him. It was insisted that a policy could not be effected by the husband for the benefit of the .wife and her heirs in the absence of statute. Also, that the insured being insolvent could not invest money in an insurance policy to the exclusion of creditors without statutory aid. It was held that a policy in favor of the wife could be taken out by the husband without the aid of statute, and that the husband’s administrator could not attack the policy on the ground of the alleged fraud of his deceased in investing funds therein. It was further held that as the policy was payable to the wife, her-heirs, executors or assigns, upon her death the beneficial interest passed to her personal representative (her administrator), who, upon the death of the husband, became entitled to the proceeds of the policy to be administered and distributed under law. This, because by the express terms of the policy the proceeds thereof were pay *41 able to her, it being payable, as stated, to her heirs, executors and assigns.
In the case before us for decision the policy, by its express terms, was payable to the wife provided she survived the husband, and in event she did not survive her husband it was payable to her children. We follow the express provision of the policy here, as the court did in the case last cited.
In Collins v. Danley, 4 Colo. 138, D., the husband of defendant in error (plaintiff below), borrowed money from the bank and gave his promissory note therefor payable to M., who indorsed the same to the bank, and to indemnify M. and to. secure the bank in payment of the note, D. deposited with the bank a policy of insurance on his life for the benefit of his wife, and an assignment of said policy by the wife to secure the note. After the maturity of the note, D. made a -payment thereon, and gave a renewal note for the balance, with a new security thereon. The policy of insurance still remained at the bank as collateral security for the amount due according to the understanding of the parties. No payment had been made on the note when D. died. After his death defendant in error — the wife — obtained a loan of one thousand dollars from plaintiffs in error upon assignment to them of the policy with authority to collect the amount due thereon. She represented the policy as lost. Plaintiffs in error soon after found that the policy was in the bank, and the cashier thereof offered to deliver it to plaintiffs in error upon payment of the balance due on the note held by the bank. This was agreed to, the policy forwarded to the insurer, the amount thereof paid in full, and therefrom plaintiffs in error paid the bank, deducted the amount they had so paid, and the amount of their loan to defendant in error, and remitted her the balance. She sued plaintiffs in error to recover the *42 amount paid the bank. Two questions arose for decision: 1, could the wife assign as collateral the policy to secure the debt of her husband? 2, did the renewal of the first note operate to release such security? The court answered the first question in the affirmative, the second in the negative. The facts here differed from the case at bar in this: There the •wife survived the husband, and by the express terms of the policy became entitled to the proceeds of it. By her assignments others had been substituted to her rights.
In Love v. Clune, 24 Colo. 237, B. insured his life in the. Locomotive Engineer Mutual Life and Accident Insurance Association for the benefit of his mother. Later he surrendered the certificates evidencing this insurance without the consent of his mother to the company, and took out two new policies for the same amount in lieu of them, and therein made his betrothed the beneficiary instead of the mother. The insured was killed, and the mother and betrothed each demanded the proceeds of the policy. The company paid the amount called for by the policy into the registry of the court where the mother and betrothed each made claim. The court held the deceased did not have the power to surrender the original policy in which the mother was the beneficiary without her consent. Also, that the insurer — the Benefit Association — could not name as a beneficiary in its policy one who was not a member of the family of the insured, that the betrothed of the insured was not a member of his family, therefore, the mother was entitled to the fund.
Sheets v. Sheets, 4 Colo. App. 450, plaintiff and defendant, formerly husband and wife, were divorced. Before their married life, and during its existence, defendant loaned plaintiff (her husband) large sums of. money, and after they were married took out a *43 policy of insurance on Ms life for ten thousand dollars, whereby the insuring company promised, in the event of the death of the insured, to pay said amount to her if surviving, and if not, to her then-surviving children, or in the event of no children surviving, then to her legal representatives. She paid all the premiums on the policy except one, which premiums amounted to something over five thousand dollars. Not.being able to continue the payment of premiums she surrendered the policy to the company for a cash payment of $1,784. After she had received the money, the former husband sued her to recover this sum. Whether she had children surviving at the time she surrendered the policy for a cash payment does not appear. So far as we are advised by the opinion she may have had no children at the time of the surrender of the policy, or, if she had any, they may have consented to its surrender and the payment of its cash value to the mother; certain it is, the sole question presented,, and decided, was whether the husband wás entitled as against the former wife to the cash payment made to her for the surrender of the policy. The court held that-he was not, and it is clear that as by the express terms of the policy he was not a beneficiary of it, he was not entitled to its proceeds. There is nothing in this case, nor is there anything in any one of the cases or authorities cited in it, in conflict with our conclusion in the present case.
It would unduly extend this opinion to take up and review herein the ’ numerous other authorities cited; we have examined them all, no one of them is in conflict with our conclusion herein.
Appellee says that appellant is estopped to make the contention that she. has no interest in the policy. "We do not think so.' Appellant, so far.as the evidence discloses, did not know until after, the assignments, *44 of the death of Mrs. Fannie Heller. It in no manner justified any one of the assignees of the policy in believing that any interest was being acquired in the policy by the assignment. No assignee thereof was justifiably misled to his prejudice in taking the assignment by any act of appellant. January, 1898, appellee, who was then in possession of the policy, voluntarily sent it to appellant with the request, that it be made a paid-up policy. In pursuance of such request the company made an indorsement thereon purporting to convert the policy into a paid-up one for $1,903.00. Even if we assume this indorsement, made in the absence of the consent of the beneficiaries under the original policy, the nine children of Fannie Heller, to have been binding on any one, it gave appellee no greater interest in the policy in its then paid-up condition than she had in the original policy, which was nothing, because the policy so changed still ran in the same favor as the original policy. The company was not obligated by the terms of the policy as it originally stood, or 'in its paid-up condition, to pay anything thereon until the happening of the contingency named in the policy, this contingency being the death of David Heller. By the letter of July, 1898, above set out, appellee was advised that on a legal surrender of the policy in the suit appellant would pay therefor $810.00. This payment was to be made to the beneficiaries under the policy, or to their assignee, provided a legal surrender of the policy was made. . But no legal surrender of the policy was made, nor did appellee acquire the interest of the beneficiaries therein, so appellant company did not become obligated to pay .appellee any sum as" a cash purchase price for the policy. Appellee had no substantial interest in the original policy, none in the same after it was indorsed as a paid-up policy, therefore, could sustain no substantial dam *45 ages by a failure of appellant to deliver the appellee tire original or the substituted policy. Appellant was not estopped to raise this question. • '
We express no opinion as to whether appellee was entitled to recover nominal damages for the alleged conversion, because appellant consented before trial that a judgment should go against it for nominal damages.
This opinion departs in no essential particular the original opinion which was concurred in by the three judges then constituting this court. Since it was amended, the personnel of the court has been changed by. Judge Maxwell succeeding Judge Wil1 son, then a member of the court. The present opinion has been concurred in by all the members of the court as now constituted.
Judgment reversed. Reversed.