**In the Matter of MILE HI RESTAURANTS, INC., Bankrupt.**

**No. 32109.**

United States District Court
D. Colorado.
Oct. 2, 1964.

Kenneth R. Oldham, Denver, Colo., for Arden R. Grover, petitioner for review.

Jack D. Henderson, Denver, Colo., for trustee.

James A. Clark, Asst. U. S. Atty., Denver, Colo., and Arthur B. Bleecher, Internal Revenue Service, Denver, Colo., for United States.

William G. Sumners, Jr., Denver, Colo., for Foster R. Orr.

CHILSON, District Judge.

This matter is before the Court on a petition for review of certain orders entered by the Referee in Bankruptcy. Involved is the priority of claims of the United States of America, Foster R. Orr and Arden R. Grover to the proceeds of certain life insurance policies.

The essential facts are not in dispute.

Mile Hi Restaurants, Inc., a Colorado corporation, was adjudged a bankrupt on an involuntary petition filed on August 6, 1962. On that day two policies of life insurance were among the bankrupt's assets. The policies were issued respectively by Equitable Life Insurance Company of Iowa (Equitable) and Connecticut General Life Insurance Company (Connecticut). Each insured the life of Arthur S. Miller, Sr., and the bankrupt was, under the terms and conditions of each of the policies, both the owner and the beneficiary thereof.

On April 5, 1961, the bankrupt executed to the Union National Bank (Union) its promissory note in the principal amount of $38,000.00, and secured the payment of the note with the two policies here involved by delivery of the policies to Union and by executing and delivering to Union blank forms of "Assignment of Life Insurance as Collateral." On the same date Orr executed and delivered to Union a guaranty of the payment of the note to the extent of $15,000.00. July 31, 1961, Orr paid Union the balance of the principal then due, $14,207.68, and the then accrued interest of $64.13. Thereupon Union endorsed and delivered the note to Orr together with the policies and the assignments heretofore mentioned. Neither Orr nor Union delivered the assignments to Equitable or Connecticut.

On October 20, 1961, the bankrupt executed its promissory note to Grover in the principal amount of $12,500.00. (This was a renewal note for a note executed on April 7, 1961, for $15,000.00 executed by the bankrupt to Grover).

On November 1, 1961, in accordance with a corporate resolution, the bankrupt assigned to Grover the Connecticut policy as collateral security for any and all indebtedness owing to Grover by the bankrupt remaining unpaid at the time of the settlement of the policy. Grover transmitted the executed assignment to Connecticut and the company noted on the assignment that it had been "recorded and filed" on January 27, 1962.

On December 1 and 4, 1961 and on February 2, 1962, the United States assessed excise, withholding and F.I.C.A. taxes against the bankrupt which became a lien upon the property interest of the bankrupt in the policies as of the date of assessment by virtue of Title 26 U.S.C. §§ 6321 and 6322. Notice of the lien was filed in accordance with Title 26 U.S.C. § 6323(a) on February 2, 1962.

As previously noted, the bankruptcy petition was filed on August 6, 1962. On August 10, 1962, the insured died and both policies were then in effect.

The Grover note had been in default since December 1, 1961, and Grover had paid all premiums on the Connecticut policy from that date to the date of the insured's death, amounting to $1704.27.

On the date of death the benefits payable on the Equitable policy were $36,244.16 and on the Connecticut policy $20,453.49.

The United States claimed a lien on the proceeds of the policies for $48,180.58 under Title 26 U.S.C. §§ 6321–6323(a).

Orr, as pledgee of the policies, claimed the proceeds of the policies to the extent of the balance due on the Union note which had been assigned to him, plus interest and attorney's fees.

Grover claimed a right to have his note, together with interest, attorney's fees and the amount paid for insurance pre-

miums paid out of the proceeds of the Connecticut policy.

By stipulation the proceeds of the policies were paid by the insurers to the trustee to be held pending the determination of the various claims.

The Referee determined the amounts due from the bankrupt to the three claimants. The petitions for review do not attack the Referee's determination of the amounts due the respective claimants and the Referee's findings in this respect are not here in issue.

The Referee determined that Orr's claim should be allowed, as secured, to be paid out of the proceeds of the Equitable policy.

The Referee denied Grover's claim to the proceeds of the Connecticut policy and his claim was allowed as unsecured.

As to the claim of the United States, the Referee allowed $48,180.58 as a secured claim to be paid out of the Equitable policy remaining after Orr's claim had been satisfied.

The United States and Grover have petitioned for a review.

On September 17, 1964, this matter was heard before the Court and the Court is now duly advised.

■■■ The taxes became a lien upon whatever property interest the bankrupt had in the policies on the date of the tax assessment.

The bankrupt's property interest at that time depends upon the validity or invalidity of the Orr and Grover liens. If these liens were invalid, the tax lien attached to the entire interest and ultimately to the entire proceeds of the policies. If, however, Orr and Grover had valid liens, we then have three liens competing for the same property and the relative priorities of these liens must be determined.

Therefore, in essence the Court must determine:

(1) Whether or not Orr and Grover had valid liens upon the policies; and

(2) If so, the relative priorities of those liens with the tax lien of the United States.

■■■ The first question is to be determined by state law, the second by federal law. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365.

Unless the Orr and Grover transactions are affected by the Colorado Accounts Receivable Statute, Chapter 11–2–1 C.R.S. '53, a question which we shall later discuss, both Orr and Grover had liens upon the policies which were valid under the laws of Colorado.

In the Orr transaction, both policies were delivered to the Union Bank as a pledge to secure the bankrupt's debt to Union. Orr, as assignee of that debt, became possessed of the policies as collateral security for the debt assigned to him. The delivery of a life insurance policy to a creditor as collateral security for the debt has been recognized by the Supreme Court of Colorado as a valid pledge. Collins v. Dawley, 4 Colo. 138.

Grover received an assignment of the Connecticut policy as collateral security for the bankrupt's debt to him. The assignment was filed with Connecticut. It is admitted and the Court finds that Grover had a valid lien under Colorado law upon the Connecticut policy unless the Colorado Accounts Receivable Statute affected the transaction.

Assuming for the moment that neither the Orr nor Grover liens are affected by the Accounts Receivable Statute, we turn to a consideration under federal law of the relative priority of the three competing liens.

Title 26 U.S.C. § 6323(a) provides that the tax lien of the United States shall not be valid as against any pledgee or mortgagee until notice thereof has been filed by the Secretary. This notice was filed February 2, 1962.

Orr being a pledgee and the pledge having been effected prior to the filing of the United States' lien, Orr's claim would appear to have priority under Section 6323(a).

However, for the Orr lien to prevail over the tax lien, we must apply the "perfected lien standard". See United

States v. L. R. Foy Construction Company, 300 F.2d 207 (10th Cir.). This standard requires that in order for the Orr lien to prevail over the tax lien it must have been perfected or choate prior to the filing of the tax lien; that is, it must have been definite in the identity of the lienor, the property subject to the lien, and the amount of the lien. The Orr lien stands this test in every respect.

Grover is a mortgagee within the meaning of Section 6323(a), for it was held in United States v. L. R. Foy Construction Company, 300 F.2d 207 (10th Cir.) that an assignment of the nature and character here involved is a mortgage within the meaning of Section 6323(a).

The Grover claim also meets the perfected lien standard, that is to say, it was perfected or choate prior to the filing of the notice of the tax lien.

It is apparent then that if the Orr and Grover liens are valid, they have priority over the tax lien.

There remains for determination the effect, if any, the Accounts Receivable Statute of the State of Colorado may have upon the validity of the Orr and Grover liens.

The United States contends that the life insurance policies here involved are accounts receivable and as such are subject to the provisions of Chapter 11, Article 2, Section 1 of the Colorado Revised Statutes 1953.

This statute provides in essence that assignment of accounts receivable, whether existing or contracted in the future, "may be protected" by following the procedure specified in the statute, which includes the filing of a notice of the assignment with the Secretary of State. Admittedly neither Orr nor Grover complied with this statutory requirement.

When the statutory procedure is followed the assignee is protected against the claims of third parties to the extent set forth in the statute.

The specific question before the Court is whether or not the life insurance policies here involved are included in or excluded from the operation of this statute.

The definition of an account receivable as set forth in the statute and insofar as here pertinent states:

" 'Account' or 'account receivable' means an existing or future right to the payment of money presently due, or to become due: * * *

"Which right to payment is not represented by a judgment, a negotiable instrument, or a non-negotiable instrument which so represents the obligation that an assignee who takes possession of it, takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument."

Counsel have cited no Colorado court decisions construing this particular provision of the statute and we have found none.

From other jurisdictions the case most nearly in point is M. M. Landy, Inc. v. Nicholas, 221 F.2d 923 (5th Cir.) which considered an identical provision of the Florida Accounts Receivable Statute. The instruments involved in Landy were warrants issued by the United States evidencing the bankrupt's rights to payments of choses in action or accounts owing by the United States to the bankrupt. These accounts were assigned to Landy to secure loans made by him to the bankrupt, and the warrants were delivered to Landy as collateral security therefor. The court found itself in a situation similar to this Court, for the Florida courts had not construed this provision of the statute. The court in Landy stated at page 928:

"Therefore, we conclude that although there are no Florida cases of which we are aware holding that any non-negotiable instrument can 'so represent the obligation that an assignee who takes possession of it, takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument,' there must certainly be such

instruments. And we think that the statutory language indicates clearly that the Florida legislature intended to except from 'accounts receivable' that class of non-negotiable instruments the delivery of which effects a valid pledge of the obligations represented by or embodied in those instruments. In other words, to take the present example, if the delivery of the warrants here was a pledge of the claim against the Government, Landy's failure to record did not prevent his security interest from being a perfected one under the terms of the Florida statute. We shall therefore proceed to inquire as to the scope of the class of non-negotiable instruments which embody obligations, for the purposes of the law of pledges."

The court then cited several cases which hold that delivery of stock certificates, insurance policies and savings bank books effects a valid pledge of the obligations represented by those instruments.

The court concluded at page 931:

"The very fact that the Florida legislature excluded from accounts receivable obligations 'represented by' non-negotiable instruments, recognizes the fact that some obligations may be embodied in such instruments. We do not see any compelling reason to limit this embodiment to insurance policies or bonds, but on the contrary think that the better authorities, and certainly the greater number, require us to hold that the possession of the warrants by Landy in the instant case was a pledge of the claim against the Government, a perfected security interest and was expressly excluded from the statutory requirement of filing of assignments of accounts receivable."

We believe that the reasoning of the court in Landy which led to its construction of the Florida statute is sound and equally applicable to the Colorado Accounts Receivable Statute.

We conclude, therefore, that the life insurance policies here in question are non-negotiable instruments which are expressly excluded from the operation of the Colorado Accounts Receivable Statute.

The Referee, while recognizing the rule of Collins v. Dawley, supra, thought the rule should be limited to "indispensable instruments" and held that the Connecticut policy was not an indispensable instrument because it provided "the policy proceeds are payable upon receipt of due proofs of loss and, *if required by the company,* upon surrender of the policy." (Emphasis added.) It is true, as pointed out in Landy, that while many authorities have adopted the rule that insurance policies and similar non-negotiable instruments may be the subject of pledges by delivery alone, the Restatement of Securities is more conservative in that it would limit this rule only to "indispensable instruments". (Restatement of Securities, Section 1, Comment (e).)

We are here, however, confronted with a rule of law established by the highest court of the State of Colorado in Collins v. Dawley, supra, and this rule is binding upon this Court in determining the property interests in the policies.

That rule does not recognize the "indispensable instruments" limitation but recognizes that a valid pledge of a life insurance policy is accomplished by delivery of the policy to the pledgee with no limitations expressed.

The Court concludes, therefore:

1. That Orr had a valid lien on the insurance policies as a pledgee at the time of the assessment of the taxes; that said lien was a perfected lien prior to the time that the tax lien attached and that Orr's lien has priority over the tax lien to the extent of the amount which the Referee found was due and owing to Orr.

2. That Grover, by virtue of the assignment of the Connecticut policy to him, had a lien upon the Connecticut

policy at the time that the Government's tax lien attached; that Grover's lien was perfected prior to the time that the Government's tax lien attached and that Grovers' lien has priority over the tax lien to the extent of the amount which the Referee found was due and owing to Grover.

It is therefore ordered that the order of the Referee that the claim of Orr be paid out of the proceeds of the Equitable policy be and the same is hereby affirmed.

It is further ordered that the order of the Referee allowing the claim of Grover as an unsecured claim be and the same is hereby reversed.

It is further ordered that this matter is hereby remanded to the Referee to enter such order or orders as may be necessary or proper to effectuate the decision of this Court.